Argued and submitted December 16, 1994, affirmed May 24, 1995

## Steven D. CHAMBERLAIN,
*Appellant,*

*v.*

## Nancy WILLIAMS,
aka Nancy West,
*Respondent.*

(92 FO 112; CA A82338)

895 P2d 805

Loralee McKee waived oral argument and filed the briefs for appellant.

Robert Custis argued the cause for respondent. With him on the brief was Custis, Stilley & Bischoff.

·Before Deits, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Petitioner appeals from a judgment that dismissed his filiation petition. The court dismissed the petition after granting respondent's motion for summary judgment. We affirm.

Our review of a summary judgment is to determine whether the moving party has met its burden to show that there are no material issues of fact and that it is entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978); *St. Paul Fire v. McCormick & Baxter Creosoting*, 126 Or App 689, 870 P2d 260 (1993), *mod* 128 Or App 234, 875 P2d 537 (1994). We view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993).

Petitioner and respondent (mother) cohabited from April 1986 until November 1990. Mother became pregnant in September or October 1990. The parties subsequently separated. Mother gave birth to a child on July 25, 1991. She identified Wooten as the child's biological father. On July 26, 1991, PLAN International Adoption Services assumed custody of the child for adoption pursuant to release and surrender agreements executed by mother and Wooten. On August 14, 1991, the child was adopted and a final adoption decree was entered on August 22, 1991.

On August 13, 1991, petitioner filed a petition in Curry County Circuit Court to establish paternity, child custody, visitation and support. He alleged, *inter alia*, that he was the biological father of mother's child. On December 19, 1991, the court dismissed that petition for lack of proof of service.

On July 14, 1993, petitioner filed a filiation petition in Coos County Circuit Court. He later filed an amended filiation petition and then a second amended filiation petition on October 12, 1993. On mother's motion for summary judgment, the court first held that the petition was barred by ORS 109.381(3), set out below, and ORS 109.096(8),[1] because

---

[1] ORS 109.096(8) provides:

"A putative father has the primary responsibility to protect his rights, and

it was not commenced within one year from the entry of the adoption decree. It held that the adoption decree established a presumption that petitioner had abandoned the child and consented to the adoption. The court further held that the adoption qualified as a method of establishing paternity under ORS 109.070(6), established the adoptive parents as the child's lawful parents and established that the child was not a "child born out of wedlock" under ORS 109.124(2).[2] Consequently, it concluded that petitioner was not eligible to file a filiation petition or participate in a voluntary adoption registry, and dismissed his petition. *See* ORS 109.125(1)(e); ORS 109.455; ORS 109.425(6)(b).[3]

---

nothing in this section shall be used to set aside an act of a permanent nature including, but not limited to, adoption or termination of parental rights, unless the father establishes within one year after the entry of the final decree or order fraud on the part of a petitioner in the proceeding with respect to matters specified in subsections (1) to (5) of this section."

[2] ORS 109.070 provides, in part:

"The paternity of a person may be established as follows:

"* * * * *

"(6) By paternity being established or declared by other provision of law."

ORS 109.124(2) provides:

" 'Child born out of wedlock' means a child born to an unmarried woman, or to a married woman by a man other than her husband, if the conclusive presumption in ORS 41.350(6) (1979 Replacement Part) and 109.070(1) does not apply."

[3] ORS 109.125 provides, in part:

"(1) Any of the following may initiate a proceeding under this section:

"* * * * *

"(e) A person claiming to be the father of a child born out of wedlock or of an unborn child who may be born out of wedlock * * *."

ORS 109.455 provides:

"(1) As provided in ORS 109.475, only a birth parent, adult adoptee, adult genetic sibling of an adoptee, adoptive parent of a deceased adoptee or parents or adult siblings of a deceased birth parent or parents may use the registry for obtaining identifying information about birth parents, adult adoptees and adult adoptee genetic siblings. However, an adult adoptee who has a genetic sibling in the adult adoptee's adoptive family who is under the age of 18 shall not have access to the registry.

"(2) Birth parents, adult adoptees, adult genetic siblings of an adoptee, adoptive parents or parents of a deceased adoptee and parents or adult siblings of a deceased birth parent or parents shall work through the agency involved in the adoption, or its successor agency, or Children's Services Division to receive information concerning the adoption."

ORS 109.425 provides:

Petitioner assigns error to the court's grant of summary judgment and dismissal of his petition. He argues that there is a material issue of fact concerning paternity, because mother does not deny that she cohabited with him exclusively during the time the child was conceived and does not allege she engaged in sexual relations with Wooten during that time. He also argues that Wooten's consent to the adoption does not establish paternity and that affidavits submitted by mother contain conclusions, not facts, concerning paternity. His final argument is that the legislature did not intend that the entry of an adoption decree would establish paternity under ORS 109.070. Petitioner concedes that the adoption decree precludes him from asserting or establishing parental rights. He seeks to establish himself as the biological father of child "to obtain and provide accurate medical and hereditary information on the child and child's biological father to provide accurate information for the child to participate in the Voluntary Adoption Registry as an adult adoptee, should she so desire." *See* ORS 109.342. He also "seeks 'to be declared the natural father of the child * * * to participate in any open adoption agreement which may exist.' "

ORS 109.381(3) provides:

"After the expiration of one year from the entry of a decree of adoption in this state the validity of the adoption shall be binding on all persons, and it shall be conclusively presumed that the child's natural parents and all other persons who might claim to have any right to, or over the child, have abandoned the child and consented to the entry of such decree of adoption, and that the child became the lawful child of the adoptive parents or parent at the time when the decree of adoption was rendered, all irrespective of jurisdictional or other defects in the adoption proceeding; *after the*

---

"As used in this section and ORS 109.435 to 109.507 and 109.990(3):

"* * * * *

"(6) 'Birth parent' is

"(a) The man or woman who is legally presumed under the laws of this state to be the father or mother of genetic origin of a child; and

"(b) A putative father of the child if the birth mother alleges he is the father and the putative father, by written affidavit or surrender and release executed within one year of the relinquishment of the child by the birth mother or termination of parental rights of the birth mother, acknowledges being the child's biological father."

*expiration of such one-year period no one may question the validity of the adoption for any reason, either through collateral or direct proceedings, and all persons shall be bound thereby*; provided, however, the provisions of this section shall not affect such right of appeal from a decree of adoption as may be provided by law." (Emphasis supplied.)

It is undisputed that the adoption decree was entered more than a year before petitioner initiated this filiation proceeding. Thus, our first inquiry is whether this proceeding is barred by ORS 109.381(3).

The Supreme Court has described a collateral attack on an adoption decree as " 'an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying the decree.' " *State ex rel Costello v. Cottrell*, 318 Or 338, 343, 867 P2d 498 (1994) (quoting *Morrill v. Morrill and Killen*, 20 Or 96, 101, 25 P 362 (1890)). In *Costello*, a birth grandmother filed a petition seeking grandparent visitation with a grandchild after the child had been adopted and a decree of adoption had been entered. Because the grandmother challenged the validity of the adoption decree in the grandparent visitation proceeding, the proceeding was a collateral attack on the decree. *Id.* at 342-43.

Before entering an adoption decree, a court must determine that a child's biological parents consent to the adoption or that the parents' consent is not necessary under an exception to the general requirement for consent. ORS 109.312(1); *Stubbs v. Weathersby*, 320 Or 620, 629, 892 P2d 991 (1995).[4] A parent's consent to an adoption must be in writing and is ordinarily a jurisdictional prerequisite for an adoption decree. ORS 109.312(1); *Stubbs*, 320 Or at 630; *see*

---

[4] ORS 109.312(1) provides:

"Except as provided in ORS 109.314 to 109.329, consent in writing to the adoption under ORS 109.309 of a child shall be given by:

"(a) The parents of the child, or the survivor of them.

"(b) The guardian of the child, if the child has no living parent.

"(c) The next of kin in this state, if the child has no living parent and no guardian.

"(d) Some suitable person appointed by the court to act in the proceeding as next friend of the child to give or withhold consent, if the child has no living parent and no guardian or next of kin qualified to consent."

*also Hughes v. Aetna Casualty Co.*, 234 Or 426, 435, 383 P2d 55 (1963) ("Consent to an adoption by parents or guardian or other person *in loco parentis* is jurisdictional, except where the statute does not require it."). An adoption decree is void if the adoption court had no jurisdiction to enter the decree because the biological parents had not consented. *Hogue v. Olympic Bank*, 76 Or App 17, 708 P2d 605 (1985), *rev den* 300 Or 545 (1986).

■ Here, petitioner asserts that he, not Wooten, is the biological father of the child. By making that assertion, petitioner implicitly challenges the effectiveness of Wooten's consent. If petitioner, not Wooten, is the child's biological father, then Wooten's signed release and surrender agreements and consent to the adoption would have been meaningless and unnecessary. Petitioner's, not Wooten's, consent would have been required for the court to have jurisdiction over the adoption. In short, by asserting that he is the child's biological father, petitioner essentially challenges Wooten's consent and the validity of the adoption decree. Such an indirect challenge to an adoption decree is a collateral attack, which is prohibited by ORS 109.381(3). *See also Costello.* The trial court did not err in concluding that ORS 109.381(3) bars petitioner's filiation petition.

Because we conclude that ORS 109.381(3) bars petitioner's filiation petition, we need not address petitioner's other arguments.

Affirmed.