Submitted on record and briefs April 7, affirmed June 24, 1998

## In the Matter of the Adoption of
### Chelsie Marie Timmerman, fka Chelsie Marie Ferrier.

### Mary LEWELLEN,
*Appellant,*

*v.*

### Michelle TIMMERMAN
### and Chelsie Marie Timmerman,
### fka Chelsie Marie Ferrier,
*Respondents.*

### (9412-72522; CA A95925)

962 P2d 755

John Chally filed the brief for appellant.

Maryhelen Sherrett filed the brief for respondent Michelle Timmerman.

Susan M. Svetkey filed the brief for respondent Chelsie Marie Timmerman.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

Linder, J., concurring.

## DE MUNIZ, P. J.

Plaintiff is the guardian ad litem for her two minor children, the biological children of Robert Timmerman, who died in November 1995. Plaintiff brought this proceeding against defendants Chelsie Timmerman and her mother, Michelle Timmerman, seeking to have declared void Robert's step-parent adoption of Chelsie. The trial court granted defendants' motion to dismiss under ORCP 21. Plaintiff appeals, and we affirm.

Chelsie was born on September 22, 1986, and a decree of adoption was entered in Multnomah County on June 8, 1995. The Social Security death benefits from Robert's death are divided among the three children. In March 1996, plaintiff filed a motion to set aside the decree of adoption so that the biological children would receive larger shares of the death benefits.[1]

The trial court held that, pursuant to *State ex rel Costello v. Cottrell*, 318 Or 338, 867 P2d 498 (1994), the biological children lack standing to challenge collaterally the decree of adoption. Plaintiff argues that the court erred in relying on *Costello* instead of *Hughes v. Aetna Casualty Co.*, 234 Or 426, 383 P2d 55 (1963). Defendants respond that the Supreme Court's reasoning in *Costello* is consistent with *Hughes* and that *Hughes* mandates the same conclusion that the trial court reached.

In *Hughes*, the plaintiff had been adopted in 1927. In 1961, he learned that his biological mother had died intestate in 1957. The plaintiff then brought a motion to vacate the final order of distribution so that he could inherit the estate. On the plaintiff's appeal of the trial court's denial of his motion, the Supreme Court first addressed the validity of the adoption. The court concluded that, because the biological

---

[1] Plaintiff's motion was filed in the adoption proceeding. Accompanying plaintiff's motion was the affidavit of plaintiff's counsel asserting that the court lacked jurisdiction to grant the adoption because Michelle Timmerman is not Chelsie's biological or adoptive mother and, therefore, she had no authority to consent to the adoption. Because the court dismissed plaintiff's motion on the ground that the minor children had no standing, there was no issue before the trial court regarding the validity of the adoption.

mother had not received notice, the adoption was void and subject to attack by her. However, the mother had never challenged the decree, and the court turned to the issue of "whether the son has the same right which his natural mother had but failed to exercise." 234 Or at 442. The court noted that there were "few cases in the books in which an adopted child has challenged the validity of his own adoption." *Id.* The court's consideration of those cases led it to adopt "[t]he general rule as to collateral attack upon a judgment void upon its face" set out in *In re Hampton's Estate*, 55 Cal App 2d 543, 562, 131 P2d 565 (1943):

> " 'Being neither parties to the action, nor entitled to manage the cause nor appeal from the judgment, [strangers to the decree] are by law allowed to impeach it whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition.' " *Hughes*, 234 Or at 447 (quoting 1 Freeman on Judgments 636-37, § 319 (5th ed)).

Under that rule, the plaintiff, as the person central to the adoption proceeding, could attack its validity. *See also Hampton's Estate*, 55 Cal App at 567 (it follows that the central figure to the proceedings, whose interests were mainly affected thereby, has the right to attack the decree entered that purports to thus interfere with her right of inheriting from her natural mother). Because the adoption was void, the plaintiff could inherit. *Hughes*, 234 Or at 454.

In *Costello*, the grandmother of the adopted child sought to attack the adoption decree. The grandmother had filed a proceeding to establish grandparent visitation rights pursuant to ORS 109.121 a few months before entry of the adoption decree. As a valid adoption decree would remove the grandmother's standing to seek visitation, 318 Or at 342, she sought discovery of the sealed adoption file.[2] The trial court

---

[2] Before turning to the general rule, the Supreme Court noted that the grandmother was not precluded from her challenge by ORS 109.381(3), which provides, in part, that, after the expiration of a one-year period from entry of the decree, "no one may question the validity of the adoption for any reason, either through collateral or direct proceedings, and all persons shall be bound thereby[.]" The grandmother had brought the visitation proceeding before entry of the decree. Likewise here, plaintiff filed her motion before the one-year period had expired.

entered an order giving the grandmother access to the file and, in a mandamus proceeding, the biological father raised the issue of the grandmother's standing to attack the adoption.

The Supreme Court again cited with approval the general rule set out in *Hughes*. *Costello*, 318 Or at 344. The court held that, before visitation rights are granted pursuant to ORS 109.121, a grandparent has only an "expectation" of a right to visit a grandchild; the grandparent has no enforceable legal right to visit. *Id.* at 345. Therefore, the grandmother's expectation of visitation was not a sufficient right or interest acquired before the entry of the adoption decree to give her standing to collaterally attack the decree. *Id.*

Plaintiff argues that the minor children here are more similar to the plaintiff in *Hughes* than to the grandmother in *Costello*:

> "The 'strangers' to the adoption decrees in both *Hughes* and the present case had more than a mere expectation of the right to inherit from their biological parents at the time the adoption decree was entered. Unlike in *Costello*, their rights were not dependent upon the court's discretion and fulfilling statutory criteria. Their rights to inherit or receive death benefits were more certain and already existed at the time of entry of the adoption decree. They were merely contingent upon the occurrence of an event (a parent's death), which was certain to occur. Unlike grandmother in *Costello*, the minor children in this case had acquired, prior to the decree, a right or interest to receive benefits at the time of [their father's] death."

Defendants respond that the biological children's real objection here is to the diminishing of their share of their father's death benefits. Defendants argue that the rights of the biological children are no more injured or diminished by this adoption than they would have been had father had another biological child and that there is no authority for biological children to challenge their father's right to have another child.

We agree with defendants. Assuming, without deciding, that the right to Social Security death benefits is legally

equivalent to intestate succession rights,[3] *Hughes* does not assist plaintiff. In *Hughes*, the decree of adoption terminated *any* right by the plaintiff to inherit. The "right" involved here is that of minor children to receive benefits if a parent dies, and the decree of adoption did not end the statutory right of the biological children to receive benefits if that occurred. However, until death, the number of minors who will come within the statutory provisions is not known. Until that time, a biological child has no more than an expectation of receiving a certain percentage of the available benefits. Thus, here, the decree of adoption affected the percentage but not the legal right of the biological children to receive benefits. The trial court did not err in holding that the biological children did not have standing to attack collaterally the decree of adoption.

Affirmed.

**LINDER, J.,** concurring.

I write separately because I believe the answer is more simple than we make it. In *Hughes v. Aetna Casualty Co.*, 234 Or 426, 383 P2d 55 (1963), the Supreme Court held that an adopted child (by then grown) had standing to attack the validity of his own adoption decree. His standing derived from the fact that he was *the subject* of the adoption proceeding:

> "The petitioner, who was an infant aged three years at the time of the adoption proceedings, was not, and could not have been, a party thereto, but was * * * 'the central figure therein and the person whose interests were mainly affected thereby.'" *Id.* at 447 (quoting *In re Hampton's Estate*, 55 Cal App 2d 543, 131 P2d 565 (1943)).

In contrast, in *State ex rel Costello v. Cottrell*, 318 Or 338, 867 P2d 498 (1994), when the grandmother of an adopted child sought to attack the adoption judgment, the Supreme Court concluded that she lacked standing. The court explained that, although the grandmother had an "expectation" of a

---

[3] Neither party cites the applicable Social Security provisions. We note that, under 20 CFR, ch III, § 404.350(a) (1995), minor children entitled to benefits are broadly defined, including children "dependent on the insured."

right to visit the child, that expectation was not an enforceable legal right, and thus the grandmother did not have a sufficient right or interest affected by the entry of the adoption judgment to give her standing to attack it collaterally. *Id.* at 344.

Quite simply, I believe that the interests of the adoptive siblings in this case are analogous to that of the grandmother in *Costello*. Unlike the petitioner in *Hampton*, these plaintiff siblings were not "the central figures" of the adoption proceeding in question and cannot maintain that their interests were the interests "mainly affected thereby." Nor did plaintiffs have an "enforceable interest" in Social Security death benefits before entry of the adoption judgment, because their father had not yet died. I would conclude that under *Costello* and *Hughes*, they lack standing for those reasons.

Accordingly, I concur.