Argued and submitted May 16, appeal dismissed July 31, 2002

In the Matter of
Jade Raquel Ricks and Devan Ricks,
Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
Don Rouzie and Kathy Rouzie,
*Respondents,*

*v.*

Greg TOMLINSON
and Diana Tomlinson,
*Appellants.*

9702-802791; A115198

51 P3d 639

Mark Kramer argued the cause for appellants. With him on the brief was Kramer & Associates.

John Chally argued the cause and filed the brief for respondents Don Rouzie and Kathy Rouzie.

Peter Miller argued the cause and filed the brief for minor children Jade Raquel Ricks and Devan Ricks.

Denise G. Fjordbeck, Assistant Attorney General, waived appearance for respondent State ex rel Juvenile Department of Multnomah County.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

**LINDER, J.**

This is an appeal of two orders arising out of a juvenile dependency proceeding. Because we conclude that the issues are moot, we dismiss.

The relevant facts are procedural. The subjects of this proceeding are two children who came into the juvenile court's protective jurisdiction in February 1997. Since that time, with the exception of one nine-month period in 1998, children have resided with foster parents ("foster parents," respondents in this appeal).[1] In September 2000, the juvenile court terminated the biological parents' rights and committed children to the permanent custody of the State Office for Services to Children and Families (SCF). SCF determined that it would place children for adoption with a great aunt and uncle ("relatives," appellants in this appeal), with whom they had never resided, rather than with foster parents, who applied to be the adoptive placement.

In response to SCF's placement decision, foster parents moved for intervenor status in the juvenile proceeding as psychological parents. *See* ORS 109.119. The juvenile court granted that motion. Foster parents then moved for the juvenile court to terminate SCF's custody and to commit children to their custody. Relatives did not seek to intervene, although they did move for rights of "limited participation" in the proceeding. *See former* ORS 419B.115.[2] The juvenile court denied that motion after concluding that any information that relatives might present to the court would be adequately presented by SCF and that adding an additional party would overly complicate the proceeding. Although the juvenile court denied relatives' motion for rights of limited participation, it permitted—evidently as a matter of its discretion—relatives' attorney to be present for both formal and

---

[1] Children were returned to their mother's care from the middle of February 1998 until the middle of November 1998, when they were again removed from the mother's home and again placed with the same foster parents. Children are now six and seven years old. Thus, they have lived with foster parents for well over half of their lifetimes.

[2] *Former* ORS 419B.115 *renumbered as* ORS 419B.875. Or Laws 2001, ch 622, § 39.

informal proceedings relating to foster parents' motion to terminate SCF's custody, to question an expert witness, and to present brief argument to the court.

Following that hearing, the juvenile court entered an order terminating SCF's permanent custody and committing children to the custody of foster parents. In response, relatives filed a second motion for rights of limited participation requesting that the court give them a right to appeal the order terminating the commitment to SCF.[3] The trial court denied that motion.

Relatives seek to appeal both orders—that is, they appeal the order terminating the commitment to SCF as well as the order denying their second motion for rights of limited participation. In response to their appeal, foster parents and children, who are represented by their own counsel, argue that relatives lack standing to appeal either order. Foster parents also urge that the appeal is moot and should be dismissed. Because we agree that the appeal is moot, we do not reach the question of relatives' standing to appeal either or both of the orders.

■ The mootness issue arises because, after the juvenile court entered the order that terminated SCF's custody and gave custody of children to foster parents, foster parents successfully petitioned for children's adoption. *See* ORS 109.309. That separate adoption proceeding culminated in a final decree of adoption that was entered on October 2, 2001.[4] Under the express terms of ORS 419B.328(2), the juvenile court's jurisdiction was terminated by that circumstance:

> "The court's wardship over a child found to be within the jurisdiction of the court as provided in ORS 419B.100 continues, and the child is subject to the court's jurisdiction, until one of the following occurs:
>
> "* * * * *

---

[3] They also sought access to the court file, SCF's file, and all social service and mental health records relating to the children. After filing this appeal, the relatives moved for this court to permit them access to certain file materials. We denied that motion.

[4] Relatives did not seek to intervene in that proceeding or to stay it pending the outcome of this appeal.

"(d) A decree of adoption of the child is entered by a court of competent jurisdiction[.]"

The force of that statute in this case is as plain as its terms. A decree of adoption has been entered by an Oregon circuit court, which is a court of competent jurisdiction under ORS 109.309.[5] By operation of law, the juvenile court can exercise no further jurisdiction in this proceeding.

We therefore can give relatives no relief on appeal. A reversal of the order terminating the commitment to SCF would be of no practical consequence because, without jurisdiction over children, the juvenile court cannot affect children's legal custody. Nor can the appeal of the order denying the second motion for rights of limited participation result in any practical relief. There no longer is a juvenile proceeding in which to participate.[6]

A possible argument to the contrary is one that relatives do not advance—namely, that their success in obtaining a right of limited participation would have collateral consequences because it would give them standing to challenge the adoption decree pursuant to ORS 109.381(3).[7] As legal

---

[5] ORS 109.309 provides for adoption petitions to be filed in circuit court. In limited circumstances, an adoption petition could also have been filed in the juvenile court. ORS 419B.529 (juvenile court may enter decree of adoption, and adoptive parents need not file a petition for adoption when, among other circumstances, child is committed to SCF's permanent custody). Those circumstances did not exist here. Therefore, the adoption followed a petition for adoption filed in circuit court that led to a proceeding that was jurisdictionally distinct from the juvenile proceeding. A copy of the decree has been provided to the court by the parties, and relatives do not dispute the adoption court's jurisdiction.

[6] Relatives appear to agree. In their brief, they take the position that "the appeal of the [juvenile court's] decision regarding rights of limited participation has meaning if there are further proceedings below or if a Petition for Review is filed before the Supreme Court."

[7] Both foster parents and SCF (which has declined to appear on the merits) filed an earlier motion to dismiss on grounds of mootness. In ruling on that motion, we explained that we "tentatively" had determined that the appeal would not be moot if a person's right to limited participation in the juvenile proceeding conferred standing on that person to file a petition under ORS 109.381(3) to set aside a judgment of adoption. Because the parties to the appeal had not addressed that question, we denied the motion to dismiss. None of the parties to the appeal have seized on our invitation to address that question. Relatives ignore the mootness issue altogether; foster parents reiterate their mootness claim, renewing, in *pro forma* fashion, the arguments they made in their earlier motion. We, therefore, have examined the issue without the parties' assistance.

"strangers" to the adoption proceeding, relatives would be able to attack the adoption decree pursuant to that statute only if enforcement of the adoption decree would affect rights or interests that vested in them *before* the adoption decree was entered. *Costello v. Cottrell*, 318 Or 338, 867 P2d 498 (1994). Here, relatives seek to establish only a limited procedural right to participate in the juvenile proceeding. Under *former* ORS 419B.115, such "rights" are conferred at the juvenile court's discretion and do not preexist the exercise of that discretion. Because the juvenile court declined to confer any such right on relatives, relatives had no existing "right" of participation, limited or otherwise, when the adoption decree was entered.

■ Moreover, and more fundamentally, entry of the adoption decree would not interfere with such a right, even had it preexisted the decree. The immediate effect of an adoption decree is that it "terminates the relationships, rights, and obligations between the adopted child and the birth family and establishes new rights and obligations with the adoptive family." *Costello*, 318 Or at 342 (citing ORS 109.041(1)). Relatives undoubtedly hoped that, by being granted a right to participate in the juvenile proceeding, they might acquire a relationship with the children that would create substantive rights and obligations in them *vis-à-vis* children.[8] But they do not assert that, when the adoption decree was entered, they possessed any rights and obligations that were extinguished or otherwise directly affected by the decree. Such a speculative interest is not enough to confer standing under *Costello* or to avoid a conclusion that the case is moot. *See generally Brumnett v. PSRB*, 315 Or 402, 407, 848 P2d 1194 (1993) (mere possibility of collateral consequences arising from award of appellate relief will not avoid mootness conclusion).

Appeal dismissed.

---

[8] Relatives assert, with regard to the issue of their standing, that in light of SCF's designation of them as the adoptive parents, they "were *prepared to assume* all of the rights, obligations and duties" that are conferred by adoptive parent status. (Emphasis added.) Implicitly, they concede the lack of any such rights or obligations unless and until they succeeded in becoming children's adoptive parents.